**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHWEST ADMINISTRATORS, INC., | No. C-05-2667 EMC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| EL CAMINO PAVING, | |
| Defendant. | **(Docket No. 12)** |
| _____/ | |

Plaintiff, as the administrator of the Western Conference of Teamsters Pension Trust Fund ("Trust Fund"), filed suit against Defendant, El Camino Paving, pursuant to the National Labor Relations Act, *see* 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. §§ 1132, 1145, and the Federal Declaratory Judgment Act. *See* 28 U.S.C. § 2201 *et seq*. After Defendant failed to respond to Plaintiff's complaint, default was entered on September 23, 2005.

Having considered Plaintiff's briefs and supporting documents, the Court hereby recommends that the motion for default judgment be **GRANTED**.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff sued El Camino Paving on June 29, 2005. As the administrator, Plaintiff is directed and authorized by the Trustees of the Trust Fund to bring the action on behalf of the Trustees. Pl.'s Compl. ¶ 2 (June 28, 2005), Walt Pentz Decl. in Support of Mot. for Default Judgment ¶ 2 (December 15, 2005). According to the Complaint, El Camino Paving, a California corporation, is

an employer which was delinquent in making its fringe benefit contributions to the Trust Fund, as required by a collective bargaining agreement and the Western Conference of Teamsters Agreement and Declaration of Trust, as amended ("Trust Agreement") between El Camino Paving and Teamsters Local Union, No. 287.  Mot. for Default Judgment 2:20-6. (December 20, 2005), Pl.'s Compl. ¶¶ 4, 6.  The Collective Bargaining Agreement provides that, from June 16, 2002 to June 15, 2006, Defendant is bound by the terms of the Employer-Union Pension Certification, which, in turn, binds the employer to the provisions of the Trust Agreement.  Pentz Decl., Exs. 1, 2.

Under Article IV, Section 1 of the Trust Agreement, a contribution by an employer is due no later than the 10th day of the following month.  Pentz Decl., Ex. 3 (Art. IV, Sec. 1).  Any contribution not received by that date is considered delinquent and the employer is then required to pay to the Trust Fund liquidated damages, interest, and reasonable attorney's fees and costs.  Mot. for Default Judgment 3:1-2, Pentz. Decl., Ex. 3 (Art. IV, Sec. 3(b)).  Plaintiff claims that, from March through June 2005, Defendant made delinquent payments for five covered employees. *Id*. at 3:3-6, Diane Andrade Decl. in Support of Mot. for Default Judgment, Exs. 5, 6 (December 20, 2005).  As such, Plaintiff seeks the following damages: (1) liquidated damages totaling $2,281.00, (2) $74.58 in interest, (3) $540.00 in attorney's fees, and (4) $325.00 in costs.  Andrade Decl. ¶ 5, Mot. for Default Judgment 2:20-4, Michael. J. Carroll Decl. in Support of Mot. for Default Judgment ¶¶ 2, 5 (December 20, 2005).  Plaintiff also seeks a declaratory judgment that Defendant pay fringe benefit contributions in accordance with its contractual obligations.  Pl.'s Compl. ¶ 1.

On May 11, 2005, as required by Article IV, Section 3(c) of the Trust Agreement, Plaintiff sent a notice of delinquency to Defendant which demanded payment, within ten days, of delinquent contributions for the months of March and April 2005.  It further warned that, in the event of untimely payments, there could be penalties such as liquidated damages, interest, and reasonable attorney's fees.  Pentz Decl., Exs. 3, 4.  When Defendant continued making delinquent payments, Plaintiff filed suit and, on July 12, 2005, El Camino Paving's Vice President, Melissa Campos, was served by personal delivery at 924 San Rafael, Mountain View, CA.  *See* Proof of Service (Docket No. 3).  The Clerk of the Court entered default on September 23, 2005 and Plaintiff moved for

default judgment on December 20, 2005.  *See* Clerk's Entry of Notice of Default (Docket No. 7), Mot. for Default Judgment (Docket No. 12).

## II. DISCUSSION

A. <u>Adequacy of Service of Process</u>

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Rule 4(h)(1) authorizes service upon a corporation "in a manner prescribed for individuals by subdivision (e)(1)," Fed. E. Civ. P. 4(h)(1), and Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e)(1). Under California law, a summons and complaint may be served on a corporation by delivering a copy of the documents (1) to the person designated as agent for service under certain provisions of the California Corporations Code or (2) to the "president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. P. § 416.10(a), (b).

On July 12, 2005, Plaintiff served the Defendant by personally delivering the Summons and Complaint to the Vice President of El Camino Paving, Melissa Campos, in Mountain View, California.  *See* Proof of Service (Docket No. 3).[1]  As such, service of process was properly effected.

B. <u>Entry for Default Judgment/Personal and Subject Matter Jurisdiction</u>

Defendant has failed to appear in the action.  Carroll Decl. ¶ 4.  Given Defendant's failure to respond, the entry of default judgment by the Court was proper.  Furthermore, since all allegations are taken as true on motions for default judgment, Plaintiff's claims regarding Defendant's status as a California corporation and its delinquent employee benefit contribution payments which violate ERISA provide the Court with general personal jurisdiction as well as subject matter jurisdiction.  *See* Mot. for Default Judgment 2:20-6.

---

[1] The Court's search on Yahoo! Yellow Pages, http://yp.yahoo.com, confirms the address at which Ms. Campos was served is El Camino Paving's business address.

C. <u>Merits of Motion for Default Judgment</u>

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Since, as noted above, default has already been entered in this case, the Court must take as true all factual allegations in the Plaintiff's complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

The majority of the above factors weigh in favor of default judgment. For example, if the motion for default judgment were to be denied, then Plaintiff would likely be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claim."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be left without other recourse for recovery.") Also, the sum of money at stake in the action is appropriate as it is tailored to the specific misconduct of El Camino Paving. *See id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, since Defendant has not filed an answer to Plaintiff's complaint, there is little to suggest that there is a possibility of a dispute concerning material facts, and it is unlikely that El Camino Paving's default was due to excusable neglect, especially when Plaintiff served the Summons and Complaint by personal delivery but still received no response. This is true even if Plaintiff did not serve Defendant with notice to default, as

4

such a step is not required when Defendant has never appeared in the action. *See generally* Fed. R. Civ. P. 55(b)(2).

The factors that deserve closer analysis are the second and third factors which go to the merits of Plaintiff's claim. The Exhibits attached to Walt Pentz's Declaration show that El Camino Paving entered into several agreements with Teamsters Local Union, No. 287: (1) an Individual Construction Agreement, effective June 16, 2002 to June 15, 2006, in which Defendant agreed to be bound by the terms of the Collective Bargaining Agreement, and (2) an Employer-Union Pension Certification, pursuant to which El Camino Paving adopted the Trust Agreement under which El Camino Paving would make contributions to the Trust Fund. Pentz Decl., Exs. 1, 2.

Article IV, Section 1 of the Trust Agreement provides that "[a]ll Employer Contributions required by a Pension Agreement shall be made in accordance with its terms and shall be due and payable on the date set forth in the Pension Agreement...If the Pension Agreement does not specify a date, said payments shall be made no later than the tenth (10th) day of the month for the immediately preceding month." Pentz Decl., Ex. 3 (Art. IV, Sec. 1). Any contribution not received by that date is considered delinquent. *Id*. (Art IV, Sec. 3(a)). In such an event, Section 3(c) requires that the Administrative Manager mail a notice of delinquency to the employer, which demands any delinquent payments to be made within ten days. *Id*. Plaintiff provided the notice of delinquency for the months of March and April 2005 on May 11, 2005. Pentz Decl., Ex. 4. Defendant continued to make late payments to the Trust Fund for the months between and including March and June 2005 for five employees. *See* Andrade Decl., Exs. 5, 6.

The Court must accept as true Plaintiff's allegations and evidence. *See Televideo Sys., Inc.*, 826 F.2d at 917. Plaintiff has successfully stated a claim for relief under ERISA. *See* 29 U.S.C. § 1145 (providing that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement"); *id*. § 1132(a)(3) (authorizing, inter alia, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

D.  Remedies

    1.  Damages

Because default judgment is warranted, the Court must determine what damages are appropriate. Plaintiff has the burden of "proving up" their damages. *See Board of Trustees of the Boilmaker Vacation Trust v. Skelly, Inc.* 389 F.Supp.2d 1222, 1226 (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit."). Under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who prevails in a § 1145 claim (A) unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions), (D) reasonable attorney's fees and costs, and (E) other appropriate legal or equitable relief. *See* 29 U.S.C. § 1132(g)(2). In its motion for default judgment and supplemental pleadings, Plaintiff asks for (1) liquidated damages for delinquent payments from March to June 2006 totaling $2,281.00, (2) $74.58 in interest, (3) $540.00 in attorney's fees, (4) $325.00 in costs, and (5) a declaratory judgment that Defendant pay fringe benefit contributions in accordance with its contractual obligations. Andrade Decl. ¶ 5, Mot. for Default Judgment 2:20-4, Carroll Decl. ¶¶ 2, 5.

        a.  Liquidated Damages

Article IV, Section 1 of the Trust Agreement provides that, in the event the Pension Agreement does not specify, employer contributions are due no later than the tenth day of the month for the immediately preceding month. Pentz Decl., Ex. 3 (Art. IV, Sec. 1). Any contribution not received by that date is considered delinquent. *Id.* (Art. IV, Sec. 3(a)). Section 3(b)(2) further provides that, in the event the employer does not make timely contributions, the employer shall pay liquidated damages "equal to the greater of: (A) an amount equal to the interest payable pursuant to subparagraph (1) (in addition to interest), or (B) an amount equal to twenty percent (20%) of the amount of Employer Contributions due." *Id.* (Art. IV, Sec. 3(b)(2))

Plaintiff asks for liquidated damages in the amount of 20% of Defendant's delinquent contributions for the months of March to June 2006, totaling $2,281.00. Plaintiff has provided evidence regarding the tardy, monthly contributions that were made by Defendant via bookkeeping

records and reports voluntarily submitted by Defendant to Plaintiff. Andrade Decl., Exs. 5, 6; Andrade Supplemental Decl., Ex. 8. Plaintiff has further calculated the liquidated damages as they correspond to the delinquent contributions per month. *Id*. at Ex. 5. The following chart was provided by Plaintiff:

| Month | Contrib. Due Date | Date Paid | Contrib. Paid | Liquidated Damages Due |
|---|---|---|---|---|
| March 2005 | 4/10/05 | 6/2/05 | $2,222.50 | $444.50 |
| April 2005 | 5/10/05 | 7/11/05 | $2,650.00 | $530.00 |
| May 2005 | 6/10/05 | 7/11/05 | $2,550.00 | $510.00 |
| June 2005 | 7/10/05 | 8/1/05[2] | $3,982.50 | $796.50 |
| | | | **TOTAL** | **$2,281.00** |

*Id*. Given that there is documentation of delinquent payments by Defendant and the liquidated damages are properly calculated, the Court finds the Trust has met its burden of proof with respect to liquidated damages. Accordingly, the Court recommends that the Trust Fund be awarded liquidated damages in the amount of $2,281.00.

        b.        <u>Interest</u>

Plaintiff seeks interest of 6% per annum on delinquent contributions, asking for a total of $74.58 in interest. ERISA provides that Plaintiffs may recover interest based on the rate set by the employee benefit plan. *See* 29 U.S.C. § 1132(g)(2)(C)(i). Under Article IV, Section 3(b)(1) of the Trust Agreement, an employer that becomes delinquent in making contributions must pay "[i]nterest on the amount of Employer Contributions due, at the rate determined under subsection (d), from the date on which the Employer Contributions become due and payable...until the date the Employer Contributions are paid to the Trust Fund." Pentz Decl., Ex. 3 (Art. IV, Sec. 3(b)(1)). In turn, Subsection (d) provides that interest is computed at "an annual underpayment rate of interest applicable on that date under section 6621 of the Code as amended from time to time, without compounding." *Id*.

---

[2] In Exhibit 8 to the Andrade Supplemental Decl., it appears this payment was received on 8/19/05. The Court resolves this conflict in information in Defendant's favor.

1   During the calendar quarters of April and July 2005, Section 6621 of the Internal Revenue
Code provided a 6% underpayment interest rate. *See* Internal Revenue Service,
http://www.irs.gov/irb/ (accessed March 21, 2006). As such, Plaintiff's use of a 6% underpayment
interest rate was proper. As summarized below, the Court has calculated the interest on the
delinquent contributions at 6% per annum, based on the number of days each monthly payment was
past due, and the daily interest rate.

| Contr. Due Date | Paid Date | # Days Past Due | Daily Rate | Interest Owed |
|---|---|---|---|---|
| 4/10/05 | 6/2/05 | 53 | $0.37 | $19.61 |
| 5/10/05 | 7/11/05 | 62 | $0.44 | $27.28 |
| 6/10/05 | 7/11/05 | 31 | $0.42 | $13.02 |
| 7/10/05 | 8/1/05 | 22 | $0.65 | $14.30 |
|  |  |  | **TOTAL** | **$74.21** |

The Court's calculation accords with that provided by Plaintiff except in one regard pertaining to the contribution that was due April 10, 2005. Plaintiff reported that the interest owed was $19.98, a figure that is obtained based on the daily rate of $0.37 multiplied by 54 days. However, Defendant's payment was delinquent for only 53 days between April 10 to June 2, 2005. The proper amount due for March is $19.61.

The Court finds an award of interest in the amount of $74.21.

c.   <u>Attorney's Fees and Costs</u>

Plaintiff also has asked for reasonable attorney's fees and costs they have incurred in bringing this action to recover delinquent contributions. Carroll Decl. ¶ 5. Under ERISA, reasonable attorneys' fees and costs of the action can be awarded to a fiduciary that receives a judgment in its favor. 29 U.S.C. 1132(g)(2)(D). Article IV, Section 3(b)(3) of the Trust Agreement also provides for attorneys' fees and costs for delinquent contributions. Pentz Decl., Ex. 3 (Art. IV, Sec. 3(b)(3)). According to Plaintiff, it incurred $540.00 in attorney's fees (for three billable hours at $180/hour) and $325.00 in costs.

8

### i. Attorney's Fees

Unlike a discretionary fee award under § 1132(g)(1), a fee award under § 1132(g)(2) is mandatory. *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983) (noting that § 1132(g)(2) "now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions"). Courts may, however, consider the reasonableness of a fee award under § 1132(g)(2). *See id.* at 997-98 (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980)). In *Hummell*, the Court of Appeals identified five factors that a court should consider when determining whether an award of attorney's fees is appropriate under ERISA: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees would deter others from acting under similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal questions regarding ERISA, and (5) the relative merits of the parties' positions. *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d at 453.

Here, (1) Plaintiff has demonstrated Defendant's culpability in failing to make timely contributions to the Trust Fund, (2) given the relatively small amount of money at stake, Defendant should be able to satisfy the fee award, (3) an award of fees would deter other employers from withholding employee benefit contributions, (4) Plaintiff, as the administrator of the Trust Fund, is a fiduciary over the employee benefit plans which benefit the employees, and (5) Plaintiff has demonstrated the merits of its action to recover liquidated damages and interest under the terms of the Trust Agreement.

As such, the attorney's fee sought by Plaintiff is generally reasonable, both in terms of hours and rate. The attorney has spent a little more than three hours preparing for the Motion for Entry of Default and supporting declaration, a letter to Magistrate Judge Chen requesting that the Case Management Conference be continued, and this motion. Having spent three hours on these activities is not excessive. The Court recommends that the Trust be awarded fees in the amount of $540.00.

### ii. Costs

Sections 1132(g)(1) and 1132(g)(2) specify that not only attorney's fees but also costs are recoverable. In *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996), the Ninth Circuit

1  held that the allowance for costs under § 1132(g)(1) "empowers courts to award only the types of
2  'costs' allowed by 28 U.S.C. § 1821 [providing for witness fees] or by similar such provisions." *Id*.
3  at 544. Given that this was the Ninth Circuit's approach for § 1132(g)(1), it is reasonable to apply
4  the same approach to awarding costs under § 1132(g)(2).

5  Plaintiffs should be awarded as costs the filing fee of $250 and the service-of-process fee of
6  $75, for total costs of $325. (Docket No. 1 (filing of complaint)), Carroll Decl., ¶ 2. *See* 28 U.S.C.
7  § 1920 (stating that a court may tax as cost fees of the clerk and marshal); Civ. L.R. 54-3(a)(1)
8  ("The Clerk's filing fee is allowable if paid by the claimant."); Civ. L.R. 54-3(a)(2) ("Fees for
9  service of process by someone other than the marshal acting pursuant to FRCivP 4(c) are allowable
10 to the extent reasonably required and actually incurred.")

11              d.    Declaratory Judgment

12  Although Plaintiff prayed for declaratory relief in its complaint, the instant motion does not
13 seek such relief. Since there does not appear to be any legal controversy between the parties, such
14 relief would not appear to be warranted.

### III.   RECOMMENDATION

16  For the foregoing reasons, the Court recommends that Plaintiffs be awarded damages as
17 follows: $2,281.00 for liquidated damages, $74.21 for interest, $540 for attorney's fees, and $325
18 for costs. Furthermore, the Court should allow Plaintiff to reserve its right to audit the Defendant
19 employer for any periods not previously audited, including the time period referred to above. The
20 judgment should state its entry should have no effect on either (a) Plaintiff's right to audit Defendant
21 and collect by subsequent legal action any sum found thereby to be due, or (b) Plaintiff's right to
22 collect by subsequent legal action any sums found to be due for any time period other than that
23 covered by the judgment.

24  ///
25  ///
26  ///
27  ///
28  ///

10

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: April 12, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge